# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DR. LEONARD E. SALTZMAN, KENT
EUBANK, THOMAS RIVA, and
WILLIAM and NANCY EHORN,
individually and on behalf of all others
similarly situated,

       Plaintiffs,

          v.

PELLA CORPORATION, an Iowa
corporation, and PELLA WINDOWS AND
DOORS, INC., a Delaware corporation,

       Defendants.

No. 06 C 4481
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Plaintiff window owners filed suit individually and on behalf of all others similarly situated against Defendant Pella alleging fraudulent concealment of an inherent product defect. Plaintiffs are owners of structures with Pella ProLine windows, which they allege have an inherent design defect "that has or will result in rot of the wood components which reduces the windows' useful life to as little as three years." Plaintiffs allege that Defendant manufacturer Pella Corporation and Defendant reseller Pella Windows and Doors, failed to disclose the defect to Plaintiffs prior to their purchase of the windows. According to Plaintiffs, the wood rot resulting from the defect was so widespread that in 2006, Pella created the ProLine Customer Service Enhancement Program ("PSEP") to compensate customers affected by the defect, however, Pella never informed current customers of the defect or of the PSEP. Plaintiffs further allege that Pella has also failed to inform prospective customers of the defect.

In their first amended complaint, Plaintiffs alleged several counts: (1) violation of consumer fraud statutes, (2) violation of deceptive trade practice acts, (3) fraud by omission, (4) breach of implied warranty of merchantability, (5) unjust enrichment, and (6) declaratory relief pursuant to 28 U.S.C. § 2201. Plaintiffs' fourth count was dismissed based on the statute of limitations. Plaintiffs now move to certify the following classes: (1) Rule 23(b)(3) Statutory Consumer Fraud Class (including seven state-specific subclasses)[1], (2) Rule 23(b)(3) Unjust Enrichment Class[2], (3) Rule 23(b)(2) Declaratory Judgment Class[3]; they seek to reserve their

[1] Rule 23(b)(3) Statutory Consumer Fraud Class: All persons in the states of Illinois, California, Florida, Michigan, New Jersey, New York, and North Carolina, who purchased a Pella ProLine aluminum clad casement window/s and/or own a structure containing a Pella ProLine aluminum clad case window, between January 1, 1991 and present (date of certification).

[2] Rule 23(b)(3) Unjust Enrichment Class: All persons in the states of Illinois, California, Florida, Iowa, Michigan, New Jersey, New York, North Carolina and Ohio who purchased Pella ProLine aluminum clad casement windows, between January 1, 1991 and present (date of certification).

[3] Rule 23(b)(2) Declaratory Judgment Class: All persons in the United States who own structures containing Pella ProLine aluminum clad casement windows manufactured from 1991 to present.

Plaintiffs seek the following declaratory relief:

**Declaration I**: The Court finds that all Pella ProLine aluminum clad casement windows, manufactured from 1991 to present, have a defect in the aluminum cladding of the sash component that allows water to get behind the aluminum cladding resulting in premature rotting of the wood component of the sash which wood rot may progress to adjacent wood components. The rotting of the wood component may not be detectable until after the warranty provided by Pella has expired. The Court finds that this defect is material and requires disclosure to all of these windows.

**Declaration II:** In August of 2006 Pella initiated a Pella Service Enhancement Program to provide limited remediation of wood rot in ProLine aluminum clad casement windows manufactured from 1991 to 2003. All persons who owned structures containing ProLine casement windows manufactured from 1991 to 2003 were eligible for this program. Pella however did not disclose to the persons eligible either the existence of the enhancement of their warranties, the limited remediation available, or that the windows covered by the program were defective in material and workmanship when manufactured.

fraud by omission claim for class certification pending further discovery. Plaintiffs also seek

individual damages associated with repair and replacement, attorneys' fees and costs, and

injunctive relief compelling Defendants (1) to establish a program to inspect, replace and install

---

The Court finds that the Pella Service Enhancement Program is a modification of Pella's warranty requiring disclosure to all persons eligible for this Program.

**Declaration III:** The Court finds that all Pella ProLine aluminum clad casement windows manufactured from 1991 to present have a defect in workmanship and material that allows water to penetrate behind the aluminum clad sash component of the window resulting in premature rotting of the wood component, which rot may progress to adjacent wood components, and that the rotting of the wood component may not be detectable until after the existing warranty provided by Pella has expired. The Court declares that all persons who own structures containing Pella ProLine windows manufactured from 1991 to present are to be provided the best practicable notice of the defect, which cost shall be borne by Pella.

**Declaration IV:** In August of 2006 Pella initiated a Pella Service Enhancement Program to provide limited remediation of wood rot in ProLine transom, awning and casement windows manufactured from 1991 to 2003. Only persons who owned structures containing ProLine transom, awning and casement windows manufactured from 1991 to 2003 and who repeatedly complained to Pella were purportedly included in and eligible for this program. Because the Court has determined that all Pella ProLine aluminum clad casement windows manufactured from 1991 to present have a defect in workmanship and material that allows water to penetrate behind the aluminum clad sash component of the window resulting in premature rotting of the wood component against reasonable expectations, and because the Court has found that Pella knew of this defect when it first manufactured these windows, the Court finds that the Pella Service Enhancement Program is insufficient to remediate the defects know by Pella to exist. The Court therefore declares that Pella's existing warranty on ProLine aluminum clad casement windows, limited to ten years for this defect is invalid, and, as such that limitation is unenforceable. Pella shall provide notice to all persons covered by that warranty of the removal of this time limitation.

**Declaration V:** The Court declares that Pella shall re-audit and reassess all prior warranty claims, including claims previously denied in whole or in part, where the denial was based on warranty or on other grounds, of claims related to ProLine window wood rot, whether internally coded by Pella as 06 or similar.

**Declaration VI:** The Court declares that Pella shall establish an inspection program and protocol to be communicated to class members, which will require Pella to inspect, upon request, a class member's structure to determine whether wood rot is manifest. Any disputes over coverage shall be adjudicated by a Special Master appointed by the Court and/or agreed to by the parties.

3

defective Pella windows; and (2) to re-audit denied warranty claims based on the defect.

In considering Plaintiffs' motion for class certification, I may not conduct a preliminary inquiry into the merits of the underlying claims. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177-178 (1974). However, I may look beyond the pleadings to determine whether the requirements of Rule 23 are met. *Szabo v. Bridgeport Mach., Inc.,* 249 F.3d 672, 677 (7th Cir. 2001). In order to proceed as a class action, the Plaintiffs must prove their action meets the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b). *Eisen*, 417 U.S. at 163; *see also Calkins v. Fidelity Bond & Mortgage Co.,* No. 94 C 5971, 1998 U.S. Dist. LEXIS 16144, at *2 (N.D. Ill. Oct. 8, 1998). In order to satisfy the four requirements of Rule 23(a), the representative parties must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

In addition to the four express requirements of Rule 23(a), there are two implied requirements: (1) that an identifiable class exists ("definiteness"), and (2) that the named representatives are members of the class. *LeClercq v. Lockformer* Co., No. 00 C 7164, 2001 U.S. Dist. LEXIS 2115, at *5 (N.D. Ill. Feb. 28, 2001). A class can be properly identified so long as it is defined by objective criteria. *Id*. at *5-6. This criteria must make it administratively feasible for the court to determine whether a particular individual is a class member. *Curtis v. Voss*, 73 F.R.D. 580, 582 (N.D. Ill. 1976); *see also* 7A Charles A. Wright, Arthur R. Miller, *Federal Practice and Procedure,* § 1760, at 120-121 (1972).

Plaintiffs have proposed several alternative class structures. For the following reasons, I

4

grant, in part, Plaintiffs' Motion for Class Certification, certifying the following classes: (1) a

Rule 23(b)(2) declaratory judgment class for all class members whose windows have not

manifested the alleged defect and whose windows have some wood rot but have not yet been

replaced; and (2) a Rule 23(b)(3) statutory consumer fraud class, consisting of the following six

state subclasses: California, Florida, Illinois, Michigan, New Jersey, and New York, for all

members whose windows have exhibited wood rot and who have replaced the affected windows.

I am denying Plaintiffs' motion to certify an unjust enrichment class.

## II. DISCUSSION

### A. Rule 23(a) Requirements

#### 1. Implied Requirements

"While the class does not have to be so ascertainable that every potential member can be

specifically identified at the commencement of the action, the description of the class must be

sufficiently definite so that it is administratively feasible for the court to ascertain whether a

particular individual is a member." *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 639 (D.

Colo. 1986); *see also Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 644

(N.D. Ill. 2006). Defendants claim that Plaintiffs have not adequately set forth identifiable

classes, arguing that (1) the majority of Pella's sales are to builders and contractors, and even if

an independently-owned distributor has records of the end-user's address, Pella cannot access

these records; and (2) Pella is unable to identify end purchasers from its sales to retail stores.

Defendants maintain that because Pella records do not identify most class members, individual

inquiry would be required to verify that particular class members have the windows in question.

There is some evidence that Pella and its distributors keep some records of purchasers

and warranty claims data.  Where Pella's records may be insufficient, provision of notice can supplement class identification efforts.  Notice by publication has been used in cases where potential class member names were confidential or impracticable to ascertain.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536-537 (3d Cir. 2004) (Where class members were consumers of a prescription drug, and names and addresses of these consumers were confidential and not available to parties, notice by publication combined with call center and website was sufficient notice to identify class members.); *Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 59 (D. Conn. 2001) (notice by publication used where circumstances "make it impracticable to gain the names and addresses of class members and notify them individually of the action's pendency"); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (Internet notice of settlement was acceptable substitute for individual notice where Defendant had no record of part of a class of customers.).  Plaintiffs' proposal that notice be made by publication, television and news media, and the Internet is adequate in these circumstances to identify the class members.

Defendants' concern that individual inquiry would be required to verify that particular class members have the windows in question is easily assuaged.  Plaintiffs persuasively argue that determining class membership would not be significantly distinct from Pella's routine administration of the PSEP program, and would therefore be effective and impose little burden.  First, the same visual inspection done by Pella following a warranty claim can be conducted by the homeowner himself.  The notice to class members can include information necessary to conduct a self-inspection, whereby a homeowner could identify his windows as the Pella variety

6

at issue here.  Second, Pella currently accepts photos to assess damage to windows,[4] and there is precedent for the use of photos to document claims in class actions.  *See Pelletz v. Weyerhaeuser Co.,* 255 F.R.D. 537 (W.D. Wash. 2009) (Claims process in deck building products case was reasonable where it required class members to answer two claim forms and submit ten photographs of alleged product defect.).

Because the class can be relatively easily ascertained through a combination of the use of sales records, publication of notice, and verification by photograph, I find that an identifiable class exists.

Next, Defendants argue that the class definitions are ambiguous because (1) it is unclear whether the term "purchasers" refers to people who purchased their homes from builders or purchased their windows from contractors doing remodeling; (2) it is unclear whether the phrase "persons . . . who . . . own a structure" includes residents of a class state who own a structure in a non-class state; (3) ProLine casement windows which have since been replaced will not be available for inspection.

"[I]nvestigating whether or not certain prospective class members will fit th[e class definition] criteria goes too far in the direction of judging the merits."  *See Fournigault*, 234 F.R.D. at 644.  However, it is worth noting that at this stage, there does not appear to be much ambiguity with regard to terminology used in defining the classes.[5]  The proposed statutory fraud

---

[4]  If photographs are inadequate in some cases, claim supplementation may be required. However, even if inspections are necessary, they would not be burdensome to Defendants, as such inspections are already conducted in Pella's normal course of business to provide purchase quotes or repair estimates.  Additionally, the PSEP calls for inspection only for customers with ten or more units being replaced, demonstrating that an inspection process is not always necessary for window identification.

[5] Plaintiffs note that this terminology is a duplication of Pella's terms in the PSEP documents.

class includes purchasers and owners of a structure.  Defendants make much of the indirect

purchaser who may have paid a builder or contractor for labor and materials that include Pella

windows, and ask whether such a purchaser would be included in the purchaser class.  Plaintiffs,

however, make it clear that end-users are indeed purchasers.  Since the statutory fraud class does

not include windows without a manifested defect, builders or contractors who merely purchase a

window for installation as part of their work are clearly excluded (assuming that the defect does

not manifest itself prior to the sale of the structure containing the window).  Furthermore, based

on the remedy structure that I am allowing, there is no danger of double recovery on the same

window.  If the window was repaired or replaced, then it is the party that paid for this repair that

stands to recover, whether the purchaser or structure owner.  If the window has not been

replaced, then there is no relief until and unless the defect manifests.

Defendants next argue that it is unclear whether "persons . . . who . . . own a structure"

include residents of a class state who own a structure in a non-class state.  Intertwined with this

argument is another of Defendants' arguments - that Plaintiffs' proposed class is improperly

broad because it includes individuals without "standing," as a Plaintiff residing in a class state

may have purchased his windows in a non-class state.  I address the issue of standing infra,

however it is important to note here that, "[a] class may be certified even though the initial

definition includes members who have not been injured or do not wish to pursue claims against

the defendant."  *Elliott v. ITT Corp.*, 150 F.R.D. 569, 575 (N.D. Ill. 1992).  Any issue relating to

whether class members will ultimately be able to prove their damages goes to the merits of the

case and not to class certification.

Defendants also point to conflict-of-law concerns, however, "Rule 23 specifically

provides for multiple classes in a single case, Fed.R.Civ.P. 23(c)(4)(B), and classes have been certified in cases where multiple classes were required."[6] *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748, 760 (7th Cir. 2000).  Courts have created subclasses to manage any potential conflicts among different state's laws.  *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004), *cert. denied sub nom. UnitedHealth Group, Inc. v. Klay*, 543 U.S. 1081 (2005) (noting advantages for grouping state laws and certifying subclasses accordingly); *Fournigault,* 234 F.R.D. at 643 (certifying seven state subclasses). *Calkins v. Fidelity Bond & Mortg. Co.*, No. 94C5971, 1998 WL 719569, at *3 (N.D. Ill. Oct. 8, 1998) (creating state subclasses to avoid conflicts of law); MANUAL FOR COMPLEX LITIGATION ( FOURTH) § 22.634, p. 412 (2004) (noting the option of creating subclasses if the law of only a few jurisdictions applies).

Finally, even where an individual has allegedly purchased ProLine windows and has already had them replaced, it is possible that that individual will be able to produce proof of class membership.  Defendants point to *In re Teflon Products Liability Litigation*, 254 F.R.D. 354, 363 (S.D. Iowa 2008) to support their proposition that discovery would not likely assist the court in determining whether such individuals are class members.  In *In re Teflon*, "even after a lengthy discovery period, during which each proposed representative was thoroughly deposed, many individuals themselves [were] unable to ascertain whether they belong in a particular subclass." *Id.*  In *Teflon*, Plaintiffs brought claims against DuPont, alleging that it misrepresented the safety of its non-stick cookware coating, which had been shown to decompose at normal cooking

---

[6] Rule 23(c)(5) states: "When appropriate, a class may be divided into subclasses that are each treated as a class under this rule." According to the Advisory Committee, "[w]here a class is found to include subclasses divergent in interest, the class may be divided correspondingly, and each subclass treated as a class." FED. R. CIV. P. 23(c)(4) advisory committee's note (1966) (currently 23(c)(5)).

9

temperatures, releasing a potentially harmful synthetic chemical.  In most instances, the proposed

representatives could not produce any documentation identifying the cookware at issue, nor was

visual examination an effective tool for identification. *Id.* at 361-362.  However, such is not the

case here.  The class representatives in this case have been able to produce some documentation

or proof of identification as to the model of windows they own.  Unlike the alleged defect in this

case, the shortcoming at issue in *Teflon* was not a visible one.  Where potential class members

have experienced the wood rot at issue in this case, it is possible that they have records of a Pella

inspection or have taken photographs of the window that might assist in proving their class

membership.

### 2.  Express Requirements

The four requirements of Rule 23(a) the Plaintiffs must prove to proceed as a class are, in

short: numerosity, commonality, typicality and adequacy.  Numerosity is not at issue in this case.

#### a. Commonality

Commonality is satisfied if "there are questions of law or fact common to the class."

Fed.R.Civ.P. 23(a)(2).  Plaintiffs can meet this requirement by showing a common nucleus of

operative facts exists between the named plaintiffs and the class.  *Keele v. Wexler*, 149 F.3d 589,

594 (7th Cir. 1998).  A common nucleus of operative facts is said to exist when a defendant has

"engaged in standardized conduct toward members of the proposed class."  *Id.* at 594.  The

determinative question is whether the same issues would necessarily be re-litigated over and over

again if plaintiffs were required to bring separate actions.  *Joseph*, 109 F.R.D. at 642 (D. Colo.

1986).  In this case, Plaintiffs maintain that common questions include the scope of Pella's

warranty, the nature of the PSEP and whether it amended the warranty, whether and when Pella

ProLine Windows suffered from an inherent wood "durability" defect, whether and when Pella knew of the defect, and whether and when Pella publicly announced the defect and the PSEP. These are questions that are common to the class, and are allegedly a result of Pella's standardized conduct toward the class members. Were each member in the class to bring separate actions under state consumer fraud statutes, "these questions would necessarily be litigated over and over, and the same evidence would be presented in each case." *Id.*

Defendants argue that a class cannot be defined so broadly so as to include class members "who are without standing to maintain an action on their own behalf." *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.S.D. 1982). Defendants point specifically to *Neuser v. Carrier Corporation*, in which the court refused to certify a class of plaintiffs that "own or owned high efficiency furnaces manufactured by Carrier since January 1, 1988." 2007 WL 1470855, at *3 (W.D. Wis. May 15, 2007). In that case, the plaintiffs alleged a defective secondary heat exchanger which increased the failure rate of furnaces containing this component. *Id.* at *2. The court held that certification was inappropriate. Many of the class members had "no claim," because they would have no damages, noting that "it is impossible to distinguish class members whose furnaces will fail from those who will not. The class of plaintiffs for which certification is sought is too broad and there is no reasonable means to reduce it to those individuals who might actually have claims similar to those of the named plaintiffs." *Id.* at *5. Similarly, Defendants claim, most of the putative class members in this case will have windows that manifest no wood deterioration, and that there is no feasible way to distinguish them from those whose windows might manifest a defect in the future.

This analogy fails. In *Neuser*, Plaintiffs brought a contract claim for fraud in the

11

inducement, which requires proof that the defendant knew of the defect and potential product failure, intentionally concealed this fact with intent to induce the plaintiff to purchase the product, and that the purchaser relied on the "assumed durability" of the product and was damaged by the purchase. *Id.* at *3. Damages are an essential element of the claim, and it is clear from the court's ruling that a latent defect does not qualify. In this case, the six statutory consumer fraud subclasses will consist only of plaintiffs with manifest defects.

Plaintiffs argue that common issues also exist as to damages, including the type of injury and the amount of damages, and that such issues will vary by subclass but not by class member. As part of their proposal, Plaintiffs seek as damages out-of-pocket expenses paid by those class members whose windows have manifested the defect, and who have paid to have them replaced. However, the inquiry with regard to damages and causation is too individualized. First, where the window has been removed from the structure and is no longer available, even an on-site inspection will not suffice. Determination of such damages would require findings on several highly individualized issues. Each of these members will have paid different sums for replacement and repairs of varying degrees. Furthermore, each class member who has had windows replaced, and whose windows and wood rot are not available for inspection, will need to provide documentation or other evidence of class membership. Causation will also be an issue relevant to all class members whose windows have manifest wood rot. In his deposition, Plaintiffs' expert Charles Still noted that improper installation and factors other than the defect may cause water infiltration in and around the windows. (Still Dep. at 80:19-82:8 and 26:15-27:8). Although issues of liability are common to the class, the questions of causation and damages are not, and it is for this reason that I find certification for common issues of liability

under state consumer fraud statutes appropriate, but I decline to certify a class for the issues of causation and damages. *See In re Telectronics Pacing Systems, Inc. Product Liability Litigation*, 164 F.R.D. 222 (S.D. Ohio 1995) (limiting a class suit to liability issues only, and avoiding individualized inquiries that would arrive in determining damages).

### b. Typicality

Under Rule 23(a), typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The issue of typicality is closely related to commonality and should be liberally construed. *See Keele*, 149 F.3d at 595; *Whitten v. ARS Nat'l Servs. Inc.*, No. 00 C 6080, 2001 WL 1143238, at *3-4 (N.D. Ill. Sept. 26, 2001). The typicality requirement can be met when the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983).

First, Defendants claim that because representative Plaintiff Saltzman purchased ProLine casement windows even after he initiated the suit, "issues of materiality and proximate cause are likely to be a major focus of the litigation of his claim." However, this argument does not demonstrate an atypicality of claims, but rather implicates issues of causation. In cases where plaintiffs allege fraud by omission, relevant state laws apply an objective standard in the determination of whether the omission is material.[7] Saltzman's reasons for purchasing more

---

[7] Under North Carolina law, a duty to disclose must be established for a statutory consumer fraud claim based on a material omission. *Kron Medical Corp. v. Collier Cobb & Associ., Inc.*, 420 S.E.2d 192, 197 (N.C. Ct. App. 1992). That duty arises when persons have concealed material facts. *Bear Hollow, L.L.C. v. Moberk, L.L.C*, No. 5:05CV210, 2006 WL 1642126, at *6 (W.D.N.C. June 5, 2006). In that context, "[a] fact is material if the fact untruly asserted or wrongfully suppressed, if it had been known to the party, would have influenced [its]

windows are not relevant to this inquiry. Moreover, because I decline to certify a class on the issue of causation and damages, Defendants' argument is not an obstacle to certification on issues of liability.

Next, Defendants argue that because Saltzman relied on a builder's recommendations in selecting Pella windows, the inquiry will shift to the builder. This inquiry-shift, however, does not apply in omission cases. *See Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 113 (N.D. Ill. 1993) ("Reliance may be presumed where there is a failure to disclose, yet, where a claim involves both omissions and misrepresentations, this presumption is not available."). Defendants further argue that Saltzman's statutory fraud claim requires individualized inquiries into actual reliance and deception. Because this case involves a failure to disclose, reliance is presumed. No individualized inquiry is required. *See Lipinski v. Martin J. Kelly Oldsmobile*, Inc., 759 N.E.2d 66, 70 (Ill. App. 2001) ("it is not necessary . . . to show actual reliance in order to state a valid claim based on an omission or concealment under the Consumer Fraud Act.").

Lastly, Defendants argue that because only two named Plaintiffs, residing in subclass states Illinois and Florida, have ProLine casement windows,[8] there are no named Plaintiffs who have standing to sue under the law of the remaining class states - California, Michigan, New York and New Jersey. However, the standing inquiry at this point is limited to an assessment of whether or not the *individual named* Plaintiffs have "suffered an 'injury in fact' which is fairly traceable to the challenged action of the defendant and 'likely,' as opposed to merely

judgment or decision in making the contract at all." *Id.* (quotations omitted). This is a subjective inquiry, which makes a North Carolina subclass inappropriate for certification.

[8] Named Plaintiff Kent Eubank also has ProLine casement windows installed in his home, however, he resides in Iowa, which is not included in the Plaintiffs' proposed consumer fraud class.

14

'speculative,'' to be 'redressed by a favorable decision.'" *Payton v. County of Kane*, 308 F.3d 673, 676-677, 682 (7th Cir. 2002)(citations omitted).  The Seventh Circuit has followed the Supreme Court's direction in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) and held that class certification should normally precede Article III standing challenges.  *Payton*, 308 F.3d at 680. Additionally, courts have permitted named plaintiffs to represent class members from other states in which the representatives did not reside or make purchases. *See, e.g., In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 267-69 (D. Mass. 2004) (certifying named plaintiffs who purchased the drug at issue only in certain states to represent class members who purchased the drug in other states, and deferring consideration of argument that named plaintiffs lacked standing to assert claims on behalf of those class members) (citing *Payton*, 308 F.3d at 681).

### c. Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interest of the class."  Fed.R.Civ.P. 23(a)(4).  The adequacy requirement is satisfied where the named representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class.  *In re VMS Ltd. Pshp. Sec. Lit.*, No. 90 C 2412, 1992 U.S. Dist. LEXIS 14445, at *13 (N.D.Ill. Sept. 23, 1992).  The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (U.S. 1997).  "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Id.* at 625-26 (citations omitted).  Defendants argue (1) owner's interests diverge from the interests of non-owner purchasers since the court must determine a fixed award for each window in order to

15

prevent double recovery; (2) the interests of named plaintiffs diverge from those of the class where Plaintiffs are engaged in claim splitting – named Plaintiffs have expressed an intent to seek damages for property damage but are not seeking remedies for such claims on class certification; and (3) the interests of the latent and manifest defect groups are not aligned in that individuals with manifest defects will want immediate payments, and those with latent defects will want a go-to fund for future use.

Defendants' first argument is overcome by the proposed class structure. The declaratory judgment and injunctive relief sought here apply only to a class of structure owners whose windows are either latently defective or are manifesting a defect but have not yet been replaced. The consumer fraud class, seeking damages, includes only those who have had a manifest defect and whose windows have been replaced. If the defect is manifest and the window has not yet been replaced, the remedy is that the window be fixed. If the defect is manifest and the window has been replaced, the party who paid for the replacement, whether the current structure owner or the purchaser of the window, may recover his costs. There is no danger of double recovery.

Defendants' second argument does raise a matter of significant concern. There have been several instances where courts have denied class certification "on the basis that class representatives are inadequate when they opt to pursue certain claims on a class-wide basis while jeopardizing the class members' ability to subsequently pursue other claims." *In re Universal Service Fund Telephone Billing Practices Litigation*, 219 F.R.D. 661, 669 (D. Kan. 2004). *See, e.g., In re Teflon Products Liability Litigation*, 254 F.R.D. 354, 366-68 (S.D. Iowa 2008) (finding inadequacy of representation where, by abandoning original claims and disavowing others, " the representative plaintiffs risk a future waiver not only of their own [ ] claims, but also

16

those of the absent class members."); *Thompson v. American Tobacco Co.*, 189 F.R.D. 544, 550

(D. Minn. 1999) (finding that "the named Plaintiffs' efforts to reserve personal injury and

damage claims may, in fact, jeopardize the class members' rights to bring such claims in a

subsequent case."); *Feinstein v. Firestone Tire and Rubber Co.*, 535 F. Supp. 595, 606-607

(D.C.N.Y. 1982) (finding named plaintiffs to be inadequate representatives where named

plaintiffs in defective tire case failed to bring death, injury, accident-related property damages,

and other consequential damage claims).  The danger with claim-splitting is that res judicata will

bar any future claims by absent class members.  As the *Thompson* court cautioned:

> [R]epresentatives who tailored the class claims in an effort to
> improve the possibility of demonstrating commonality obtained
> this essentially cosmetic benefit only by presenting putative class
> members with significant risks of being told later that they
> impermissibly split a single cause of action.

*Thompson*, 189 F.R.D. at 547.

If Plaintiffs' claims are true, then all class members have suffered the injury of being sold

defective windows - windows whose value has diminished due to the defect.  However, the

injuries of the named Plaintiffs appear to be more significant than this.  Windows are not stand-

alone products; they are incorporated into the structure of a building, and it is certainly possible,

in fact, even likely, that wood rot originating in the window itself may cause more widespread

problems in the walls, structure, or interior of the building, especially when the entire window

must be removed.  Although Plaintiffs in this case have at no point pled personal injury or

property damage claims, they have expressed some interest in pursuing such claims in the future

- claims based on the same conduct and transactions that are the subject of the current

17

allegations.[9]  It is conceivable that absent class members may also want to bring such claims for

similar damages.  The opportunity to opt out as required by Federal Rules of Civil Procedure

23(b)(3) and (c)(2)(B) solves any res judicata problem.  As the court explained in *Gasperoni v.*

*Metabolife, Intern. Inc.*, No. 00-71255, 2000 WL 33365948, at *4 (E.D. Mich. Sept. 27, 2000)

> If those people with individual personal injury claims can opt out
> of the class, or are specifically excluded from the definition of the
> class, there is no danger of the class waiving any individual claims
> of its members. Moreover, the only legal issue to be certified is
> simply whether the label is materially misleading. Any personal
> injuries that develop in class members after the present suit, will
> not be subject to res judicata because their claim will not have been
> actually litigated, nor will it be one that "might have been raised"
> in the previous suit.

It is clear, however, from the examples discussed *supra*, that not all courts share this view.  *See*

*Feinstein*, 535 F. Supp. at 599, 606-07, n.16 (although putative class members in defective tire

case asserted no claims for death, injury or accident-related property damage, the court found that

they were inadequate class representatives due to the possibility that they were claim-splitting,

and '[i]t is difficult to imagine many courts sanctioning separate actions for property and injury

---

[9]  While deposition testimony is itself not part of the pleadings, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."  *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 599 (7th Cir. 1993) (citing *General Telephone Co. of Southwest v. Falcon*  457 U.S. 147, 160 (1982)); *See Balderos v. Illinois Vehicle Premium Finance Co.*, No. 96 C 8050, 1997 WL 627650, at *4 (N.D. Ill. Oct. 2, 1997) (considering Plaintiff's deposition testimony in determining whether his claims were typical of the class.).  In his deposition, Plaintiff Saltzman discusses his desire to recover costs allegedly associated with the wood rot at issue, including stucco repair, the cost of new window moldings, and repainting. (Saltzman Dep. 71:17-73:20).  He also mentions potential negative impact on his home's resale value.  *Id.*  In their depositions, Plaintiffs Kent Eubank and Riva noted that were they to discover any damage in the walls upon removing their rotted windows, they would seek to recover any associated costs. (K. Eubank Dep. 127:1-127:4) (T. Riva Dep. At 122:13-122:18). During his deposition, Plaintiff Kent Eubank stated that he hoped to reserve the right to bring a personal injury lawsuit due to his exacerbated mold allergies.  (K. Eubank Dep. 129:13-131:3).

claims arising out of the same incident.").  Where "the named Plaintiffs have in fact jeopardized

the class members' potential claims for personal injury damages, they would be deemed to have

interests 'antagonistic' to those of the class." *Thompson v. American Tobacco Co., Inc.*,  189

F.R.D. 544, 550 (D.Minn.,1999).  However, these cases are distinguishable.  In *Feinstein*, the

alleged defect at issue spawned "numerous specific actions for death, injury or damage[.]" 535 F.

Supp. at 597.  In this case, Defendants have presented no evidence of any specific actions

alleging damages above and beyond window repair and replacement.[10]  In *Thompson*, the

plaintiffs reserved the issues of personal injury and damages to make class certification more

likely, however, that is not the case here.  In this case, Plaintiffs have expressly reserved only

claims for fraud by omission, saying nothing of personal injury claims or property damages

claims.

Plaintiffs cite *In re Universal Service*, 219 F.R.D. at 669, to support their claim that

certification is appropriate here.  In that case, Plaintiffs abandoned their common law fraud

claims, but continued to pursue all of their other damages claims, including a claim for trebeled

damages, "a remedy akin to the punitive damage claim plaintiffs elected to forego when they

abandoned their fraud claim."  The court noted that the fraud claims were not suitable for class

adjudication, and that the plaintiffs were not abandoning stronger claims for money damages in

favor of certifying weaker claims.  In this case, named Plaintiffs seek monetary damages in the

form of actual out-of-pocket costs of window repair and replacement, as well as declaratory and

---

[10] Defendants discuss at length *Pappas v. Pella Corporation*, No. 06 L 12771, Order, Circuit Court of Cook County, at 1-2, Aug. 21, 2007, where a similar motion for class certification was brought and denied.  In that case, plaintiffs "anticipate[d] that the damages [would] be window replacement or reimbursement for window replacement."  Defendants put forth no evidence of specific actions for other types of damages.

injunctive relief ordering the re-audit of denied warranty claims and the establishment of an inspection program. Plaintiffs have not abandoned stronger claims in favor of weaker claims; in fact Plaintiffs in this case have not "abandoned" any claims, since they were never brought in the first place. The essence of the issue in this case is an allegedly defective window; any claims for related damages will most likely be less significant and less common. Absent class members will be given the opportunity to opt out of the class if they so choose in order to pursue claims for such damages.[11]

Finally, Defendants argue that interests of class members with manifest wood rot are not aligned with those of class members whose windows are latently defective. However, this argument is based on *Amchem Products*, 521 U.S. at 626, where the Court made note of the disparity between currently injured plaintiffs and exposure-only plaintiffs in an asbestos class action. In that case, "named parties with diverse medical conditions sought to act on behalf of a single giant class rather than on behalf of discrete subclasses." *Id.* That is not the case here. Plaintiffs have proposed discrete subclasses designed around the type of injury to the class member. Named Plaintiffs are alleging a mixture of latently defective and manifestly defective windows (both replaced and not yet replaced), so they will adequately be able to represent all of the certified subclasses.

---

[11] Plaintiffs argue that class actions are one of "the recognized exceptions to the rule against claim splitting," citing 18 Moore's Federal Practice § 131.40[3][e][iii] (2002) (citing Restatement (Second) of Judgments § 26(1)(c) (1982)). The court in *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, No. 02 C 4356, 2009 WL 448895, *9 (N.D. Ill. Feb. 23, 2009) recently noted this exception. The Seventh Circuit's decision in *Crowder* signals that this circuit recognizes such an exception.

## B. Rule 23(b)(2)

Defendants argue that Plaintiffs have failed to satisfy several of the Rule 23(b)(2) requirements for class certification.

### 1. Action on Grounds Applying Generally to the Class

First, Defendants argue that because Pella found that some named Plaintiffs were eligible for PSEP and others not, they have not "acted or refused to act on grounds that apply generally to the class." Plaintiffs, however, contend that Pella acted or refused to act on grounds that apply generally to the class by failing to disclose material facts about the defect, and by secretly creating and implementing the PSEP and by not applying it consistently. Rule 23(b)(2)

> does not require that all members of the class be aggrieved by the challenged conduct, but proponents of a Rule 23(b)(2) class must be able to demonstrate that the 'conduct or lack of it which is subject to challenge be premised on a ground that is applicable to the entire class,' and that the entry of declaratory or injunctive relief would remove a barrier or impediment common to the class.

*Kazarov v. Achim,* No. 02-5097, 2003 WL 22956006 (N.D. Ill. Dec. 12, 2003) (citation omitted). Plaintiffs allege conduct by Pella that is applicable to the class.

Second, Defendants claim that "in order for a class to be certified under Rule 23(b)(2), the relief sought on behalf of the class must be primarily equitable in nature. The commentary to Rule 23 explains, '[t]his subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . . . The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.'" *Cima v.*

*WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 380 (S.D. Ill. 2008) (quoting Fed. R. Civ. P. 23 advisory committee's note.).  Defendants maintain that the primary relief Plaintiffs request is pecuniary, and therefore, certification under Rule 23(b)(2) is inappropriate.  However, the 23(b)(2) class consists only of those class members whose windows have not yet been replaced. The relief for this class is declaratory and injunctive - not monetary.  If and when their windows manifest wood rot due to the alleged defect, they may file a claim with Pella for service.

This ties into Defendants' next assertion that "[b]ecause unnamed members are bound by the action without the opportunity to opt out of a Rule 23(b)(2) class, even greater cohesiveness generally is required than in a Rule 23(b)(3) class." *In re St. Jude Medical, Inc.* 425 F.3d 1116, 1121-22 (8th Cir. 2005) (citations omitted).  It is true that "there is no right to opt out of a Rule 23(b)(2) class action." *Kifer v. Ellsworth*, 346 F.3d 1155, 1157 (7th Cir. 2003) (citations omitted).  However, "[a]bsent class members seeking non-incidental money damages may only be barred by res judicata if they have been afforded notice and an opportunity to opt out as required by Rule 23(b)(3) and (c)(2)(B)." *Gates*, 456 F. Supp. 2d at 963 (N.D.Ill., 2006).  Since they will not be afforded an opportunity to opt out of the 23(b)(2) class, the claims of absent class members seeking money damages arising from the alleged defect will not be barred by res judicata.

Defendants claim that Plaintiffs' proposed declaratory statement that the alleged defect results in wood rot presumes causation and is inconsistent with the conclusions of the Defense expert.  Plaintiffs argue that in their proposed statements, they do not ask the court to presume causation in all individual instances, only to make a finding regarding the nature of the wood durability defect and its cause.  In either case, Plaintiffs will have to prove the substance of the

22

declarations they propose, and the inconsistency that Defendants point out can be dealt with during an evaluation of the merits of the case.

### C. Rule 23(b)(3)

Defendants argue that Plaintiffs have failed to satisfy several of the Rule 23(b)(3) requirements for class certification.

#### 1. Predominance

"Considerable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Fournigault*, 234 F.R.D. at 646 (N.D. Ill. 2006) (citations omitted). Plaintiffs argue that common issues as to Pella's liability predominate over individual issues. Specifically, the predominant questions will be the scope of Pella's warranty, the nature of the PSEP and whether it amended the warranty, whether and when Pella ProLine Windows suffered from an inherent wood "durability" defect, whether and when Pella knew of the defect, and whether and when Pella publicly announced the defect and the PSEP.

First, Defendants argue that choice of law and standing issues are implicated and are highly individualized inquiries requiring the consideration of facts surrounding each transaction. Plaintiffs respond that their alternative proposal to certify subclasses by each state, to which each state's respective consumer fraud act would apply, makes this irrelevant.[12] According to the

_____

[12] In this case, certification of six statutory consumer fraud subclasses is appropriate. Although there are some differences in state consumer protection statutes, the factual and legal questions to be answered are substantively the same. The consumer fraud laws of the six states - California, Florida, Illinois, Michigan, New Jersey and New York - have nearly identical elements: injury, some form of causation and/or reliance, and materiality of the omission in dispute.

Whether the state consumer fraud law requires "injury in fact," "actual loss," "ascertainable loss," or "actual injury," the case law in five of the six states demonstrates that the diminished value of a defective product satisfies this requirement. *See Hall v. Time Inc.*, 70 Cal. Rptr. 3d 466, 471 (Cal. App. 2008) (recognizing that the unsatisfactory nature of a product or its diminished value are injuries in fact under California law); *In re Ford Motor Co. E-350 Van Products Liability Litigation (No. II)*, No. 03-4558, 2008 WL 4126264, at *24-25 (D.N.J. 2008) (applying California law and finding that allegations of van's diminished value due to defect satisfy "injury in fact"); *Collins v. Daimler/Chrysler Corp.*, 894 So.2d 988, 990-91 (Fla. App. 2004) (holding that plaintiff possessed standing to assert statutory claim under FDUTPA for alleged economic damages based on latent seat belt defect and noting that "[i]n the context of FDUTPA, 'actual damage' have long been defined as the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.") (quotation omitted); *In re General Motors Type III Door Latch Litigation*, No. 98 C 5836, 2001 WL 103434, at *3 (N.D. Ill. 2001) (noting that "[a]s a general rule, the Illinois Appellate Court has allowed product defect claims in the absence of product malfunction only when the damages claim stems from the diminished value of the defective product."); *Mayhall v. A.H. Pond Co., Inc.*, 341 N.W.2d 268, 271-72 (Mich. App. 1983) ("As the frustration of the plaintiff's expectations constitutes an injury for the purposes of proving common-law fraud, so too it constitutes a 'loss' under . . .§ 11 of the MCPA."); *Talalai v. Cooper Tire & Rubber Co.*, 823 A.2d 888, 898 (N.J. Super. Ct. 2001) (Under New Jersey law, "plaintiffs need only demonstrate an ascertainable loss-namely, an estimate of the price to replace the [defective product]"). Therefore, under the laws of these states, the common question of fact is whether the windows are defective. It is true that New York law requires that Plaintiffs prove actual injury. *Hubbard v. General Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *3 (S.D.N.Y. May 22, 1996) ("Purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own."). Although this may prove to be highly individualized, "the question of injury to individual class members is deferred until after resolution of the common questions. . . . If class certification were denied at this early stage on the basis that injury to individual class members would have to be proven on an individual basis, many classes might never be certified." *Elliott*, 150 F.R.D. at 575.

As far as reliance in cases of omission, individual reliance is not required or may be inferred from the purchase itself. *See Mass Mutual Life Ins. Co. v. Superior Court of San Diego County*, 97 Cal. App. 4th 1282, 1293, (Cal. App. 2002) (if plaintiffs succeed in proving allegations of a failure to disclose a material fact associated with the purchase of life insurance policies, "the purchases common to each class member would in turn be sufficient to give rise to the inference of common reliance on representations which were materially deficient."); *Turner Greenberg Associates, Inc. v. Pathman*, 885 So.2d 1004, 1009 (Fla. App. 2004) ("a demonstration of reliance by an individual consumer is not necessary in the context of FDUTPA"). *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66, 70 (Ill. App. 2001) ("it is not necessary . . . to show actual reliance in order to state a valid claim based on an omission or concealment under the Consumer Fraud Act."); *Dix v. American Bankers Life Assur. Co. of Florida*, 415 N.W.2d 206, 209 (Mich. 1987) ("We hold that members of a class proceeding under

Advisory Committee, "[w]here a class is found to include subclasses divergent in interest, the

class may be divided correspondingly, and each subclass treated as a class."  Fed.R.Civ.P.

---

the Consumer Protection Act need not individually prove reliance on the alleged misrepresentations."); *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007) ("[NJ CFA] essentially replaces reliance, an element of proof traditional to any fraud claim, with the requirement that plaintiff prove ascertainable loss."); *Stutman v. Chemical Bank*, 731 N.E.2d 608, 612 (N.Y. 2000)("reliance is not an element of a [statutory consumer protection] claim.")

Five states require a showing of causation.  *See* Fla. Sta. § 501.211(2) (to recover damages, plaintiff must show that loss was a result of the violation); *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005) ("Proximate causation is an element of all private causes of action under the Act."); *Gasperoni*, 2000 WL 33365948, at *7 ("reliance and causation are satisfied by proof that plaintiffs purchased and consumed the product"); *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 464-65 (N.J. 1994) ("The 'causation' provision of [N.J. Consumer Fraud Act] requires plaintiff to prove that the unlawful consumer fraud caused his loss.");  *Stutman v. Chemical Bank*, 731 N.E.2d at 611 (a plaintiff under NYCFA must prove "that the plaintiff suffered injury as a result of the deceptive act.")

In all of the states, the omission of a material fact is actionable, however, in California, an action may be brought only where there is a duty to disclose.  Such a duty arises "when the defendant actively conceals a material fact from the plaintiff."  *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007).

Five of the states' laws employ an objective, reasonable consumer standard to determine whether the omission in dispute is material.  The standard in Michigan is different.  There, an omission is reasonable "only if the omitted fact could not reasonably be known by consumer," *Zine v. Chrysler*, 600 N.W.2d 384, 398 (Mich. App. 1999), which is also an objective standard.

Four states do not require scienter, however two have some form of scienter requirement. In Illinois, plaintiffs must show that defendant intended that they rely on the deception.  *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 14 (Ill. App. 2001).  This requires defendants to have prior knowledge of the information that they are alleged to have suppressed.  *Id.*  Under Michigan law, plaintiffs must prove defendant's intent to deceive, *Clement-Rowe v. Michigan Health Care Corp.,* 538 N.W.2d 20, 23 (Mich. App.,1995); *see Zine*, 600 N.W.2d at 398 ("it is proper to construe the provisions of the MCPA with reference to the common-law tort of fraud.") (internal quotations removed).  However this may be done on a representative basis, making it appropriate for class treatment.  *Gasperoni*, 2000 WL 33365948, at *7.  New Jersey law does not require an intent to deceive per se, but does require proof that Defendant acted knowingly in making the omission.  *Strawn v. Canuso*, 657 A.2d 420, 429 (N.J. 1995) (superseded on other grounds by N.J.S.A. 46:3C-1 to –12).

None of the states' laws require privity.

Despite the differences in state law, it is clear that there are significant questions of fact common to the class with regard to liability and the proposed declaratory judgment.

23(c)(4) advisory committee's note (1966).  *Calkins v. Fidelity Bond & Mortg. Co*.,

No. 94C5971, 1998 WL 719569, at *3 (N.D. Ill. Oct. 8, 1998) (creating state subclasses to avoid

conflicts of law); MANUAL FOR COMPLEX LITIGATION ( FOURTH) § 22.634, p. 412 (2004)(noting

the option of creating subclasses if the law of only a few jurisdictions applies).

     While there are differences in the standing requirements of each state, as discussed supra,

the Seventh Circuit has held that class certification should normally precede Article III standing

challenges.  *Payton* 308 F.3d. at 680, 682.  Furthermore, this court has already denied

Defendant's Motion to Dismiss and rejected arguments about the insufficiency of Plaintiff's CFA

allegations, including whether they state claims for relief.  Therefore, because the class may be

divided into individual state subclasses where any conflict exists, and because standing of class

members as a whole is not appropriately addressed at this time, Defendants' arguments with

regard to predominance do not defeat class certification under Rule 23(b)(3).

     Second, Defendants maintain that Illinois' borrowing statute requires that the court apply

both the Illinois statute of limitations and that of the state supplying the substantive law to

determine which is shorter.  Accrual and tolling vary by state and therefore an individual

determination is required.  Plaintiffs, however, note that this Court has rejected the per se

prohibition against certification based upon statute of limitations differences on which Pella is

insisting. When confronted with this issue in *Sparano v. Southland Corp.,* No. 94 C 2098, 1996

WL 681273, at *4 (N.D. Ill., Nov. 21, 1996) this Court stated:

> Defendants claim that the differing state laws regarding statute of
> limitations and punitive damages will predominate over the common
> questions. However, the presence of unresolved individual issues of
> compliance with the statute of limitations does not prevent class actions
> from proceeding. *Stieberger v. Sullivan,* 738 F. Supp. 716, 727 (S.D.N.Y.

1990).  Any individual issues dealing with different states' statute of limitations and punitive damage laws can be handled by creating subclasses. Rule 23(b)(3) is therefore satisfied.

*See In re Linerboard Antitrust Litig.*, 305 F.3d 145, 162 (3d Cir. 2002) ("As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3).").  Due to the predominance of other issues, differences in applicable statutes of limitations do not bar class certification under Rule 23(b)(3).

Next, Defendants once again raise the issue of causation, arguing that states have unique standards for causation and that individualized inquiries will be required to determine causation of the damage in cases of manifest wood rot (i.e. poor installation).  According to Plaintiffs, the fact of damage can be identified through photographic evidence, and there is no need for individual depositions or inspection.  Plaintiffs propose photo self-identification with opportunity for follow-up inspection.  *See Pelletz*, 2009 WL 59126, at *5.  Pella currently permits photographic evidence in its warranty process and does not always make physical inspection when dealing with warranty claims.  While this may be the case, even Plaintiffs' expert has noted that improper installation, and other factors apart from any defect, may lead to water infiltration around some of the windows, as well as sheet rock damage. (Still Dep. at 80:19-82:8 and 26:15-27:8).  It is clear that in many instances, inspection will be required, and individual inquiries will predominate.  However, the fact that proving damages must be handled individually does not preclude certification on the issue of liability.  *Allen v. International Truck and Engine Corp.*,

358 F.3d 469, 472 (7th Cir. 2004).  ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 3.12 at 315 (4th ed. 2002). [13]

Defendants point to *In the Matter of Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 & n.1 (7th Cir. 2002) for the proposition that latent defect members and manifest defect members should not recover along side one another.  The court in *Bridgestone* noted that a mixed system, compensating buyers for the risk of a latent defect and buyers who have a manifest defect overcompensates buyers and may lead to excess precaution by the manufacturer.  *Id.*  However, in this case, class members whose defect has not yet manifested are included in the damages class.  Only those class members who have experienced a manifest defect and have paid to repair or replace these windows may be entitled to damages.  Those class members whose windows have not manifested any defect may be entitled to declaratory and injunctive relief.  Only once their windows experience any manifest defect, if indeed they ever do, then those members will be able to submit a claim to Pella for repair.  There is no side-by-side recovery here.

Finally, I must address the propriety of an unjust enrichment class.  A successful unjust enrichment claim requires proof of three elements: "(1) a benefit conferred on the defendant by the plaintiff;  (2) an appreciation or knowledge by the defendant of the benefit; and  (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it

---

[13] Defendants point to *Pappas v. Pella Corp.*, No 06 L 12771, Order, Circuit Court of Cook County, Illinois, Aug. 21, 2007, at 5, in which the court denied class certification on a similar set of claims and facts, based on predominance.  The court found that "there exists such potential vast differences in choice of action, type of claimed injury, and especially, the varied causal connections between the claimed injuries and the claimed reason thereof."  In that case, Plaintiffs had initially brought and abandoned a breach of warranty claim. The court expressed concern regarding the potential for other class members to bring such a claim in the future.  This is not the case here.  *See supra*, section II. 2. c.  Furthermore, I agree that issues of causation are too individualized for class certification, and I have declined to certify a class on that issue.

inequitable for the defendant to retain the benefit without payment of its value.  The Restatement

of Restitution provides that a person who has been unjustly enriched at the expense of another is

required to make restitution to the other."  26 WILLISTON ON CONTRACTS § 68:5 (4th ed. 2009).

"Damages differs from restitution in that damages is measured by the plaintiff's loss; restitution

is measured by the defendant's unjust gain." 1 D. DOBBS, REMEDIES § 3.1, at 278 (2d ed. 1993).

In this instance, restitution is the price paid by the consumer for the window, minus the

diminished value of the window.  This value is simply too difficult to quantify, especially on a

class-wide basis.  Windows are typically part of a larger structure, and many factors play a role in

determining the valuation of that structure.  Typically, individual pieces of the larger whole are

not valued separately, but are rather one piece of the structure.  This determination is too difficult

to standardize fairly, and individualized issues would certainly dominate.  For this reason, I

decline to certify an unjust enrichment class.

### 2.  Superiority

Defendants argue that based on the following three reasons, a class action is not the

superior method for adjudicating the controversy: (1) individualized issues make it

unmanageable; (2) Seventh Amendment issues; (3) notice is problematic and not all members

will be identified.

As discussed supra, neither individualized issues nor notice issues makes class

certification unmanageable, and I need not address the issues further here.  Defendants further

claim that they will insist on their Seventh Amendment right to a jury trial and will not relinquish

their right to proof of injury.  However, "the question of injury to individual class members is

deferred until after resolution of the common questions. . . . If class certification were denied at

this early stage on the basis that injury to individual class members would have to be proven on an individual basis, many classes might never be certified.*"* *Elliott*, 150 F.R.D. at 575. Because I am certifying the consumer fraud class as to the issue of liability only, and damages will be handled individually, issues will not be overlapping, and the same issue will not be reexamined by different juries. *See In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("[T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."). Because common issues of law and fact predominate, and trying these claims separately would result in a substantial amount of repetition, I find that proceeding as a class action is the superior form of adjudication for this case.

## III. CONCLUSION

For the foregoing reasons, I grant, in part, Plaintiffs' Motion for Class Certification, certifying the following classes: (1) a Rule 23(b)(2) declaratory judgment class for all class members whose windows have not manifested the alleged defect and whose windows have some wood rot but have not yet been replaced; and (2) a Rule 23(b)(3) statutory consumer fraud class, consisting of the following six state subclasses: California, Florida, Illinois, Michigan, New Jersey, and New York, for all members whose windows have exhibited wood rot and who have replaced the affected windows. I deny Plaintiffs' motion to certify an unjust enrichment class.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: June 4, 2009